# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RASHAAN O. REED,

        Petitioner,      :      Case No. 3:20-cv-170

  - vs -                         District Judge Walter H. Rice
                               Magistrate Judge Michael R. Merz

JAMES HAVILAND, Warden,
  Allen/Oakwood Correctional Institution,

                               :

        Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Rashaan O. Reed bring this habeas corpus action *pro se* under 28 U.S.C. § 2254 to obtain relief from his November 2002 conviction for murder and tampering with evidence in Montgomery County Common Pleas Case No. 2001-CR-04126.

The first step in processing any new habeas corpus case is an initial screening under Rule 4 of the Rules Governing § 2254 Cases. Under that Rule, the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Reed reports that after he was sentenced he appealed o the Ohio Second District Court of Appeals which affirmed. *State v. Reed*, 155 Ohio App. 3d 535 (2003). Writing for himself, Judge

James Brogan, and Judge Frederick Young, Judge William Wolff recounted the facts from the trial testimony:

> [**P2]  The state's evidence established the following facts:
>
> [**P3]  Sometime after 10:00 p.m. on October 21, 2000, Reed, along with Marcus Manns, arrived at the apartment of Shawn Robinson and Erica Jones. The four got into Jones' car, a 1983 gray Chrysler, with the intention of going to hang out. While traveling, Reed spoke with Smith on his cellular telephone, and Reed suggested to his companions that they pick him up. According to Robinson, Reed indicated to him that he was "about to do this nigger." At approximately 10:30 to 10:45 p.m., the group arrived at the residence of Valerie Fenton, Smith's girlfriend. Smith entered the vehicle, and they drove to Reed's residence, located at 708 Oxford. They arrived at Reed's residence shortly after 11:00 p.m. As the five individuals were heading towards Reed's apartment, Reed called to Smith, saying "Come here, Joe. Man, I need to holler at you." Reed and Smith walked around to the side of Reed's apartment building while Robinson, Jones and Manns went inside Reed's apartment. Sometime after 11:00 p.m., David Egler, whose home overlooks the alley behind Reed's apartment, heard two male voices, followed by a single gunshot. Looking from his bathroom window, Egler observed Smith lying on the ground in the alley behind Reed's apartment building and bleeding from his head. Egler called the police. The police were dispatched to the location at 11:26 p.m. A nine millimeter shell casing was found near Smith's feet.
>
> [**P4]  Having heard a "sound or something like an echo or cracking sound," Robinson left Reed's apartment and went around the side of the building. He observed Reed walking from the alley toward him. Robinson and Reed went into Reed's apartment, got Jones and Manns, and left to go to some "after-hours joints." Smith was not with them. Before entering the "after-hours joint," Reed held a gun and asked whether he should bring the weapon inside. Robinson responded, "yeah, you can bring it in here." Robinson identified the weapon as a plastic type Glock 9 millimeter. According to Peter Holloway, an individual whom Reed met at the Miami County jail in January of 2001, Reed disposed of the gun by a river. Subsequent to the shooting, Reed told numerous individuals that he had killed Smith, because he had "messed with" his girlfriend, Rhyan Cartwright, and/or his children.

*Id.*

The Court of Appeals entered judgment November 26, 2003, and Reed did not seek review by the Ohio Supreme Court (Petition, ¶ 9(g).) However, he did file an Application for Reopening under Ohio R. App. P. 26(B) which the Second District denied March 5, 2004. *Id.* at ¶ 11(a)(&) and (8).

On August 26, 2008, Reed filed *pro se* in the Common Pleas Court a motion to vacate the judgment. *Id.* at ¶ 11(b)(3) and (4). The Common Pleas Court denied this motion November 25, 2009. *Id.* On September 17, 2010, Reed filed a motion for new trial in the Common Pleas Court which that court denied. *Id.* at ¶ 11(c). On this motion he received on January 17, 2012, a nunc pro tunc amended judgment entry correcting imposition of post release control.

On October 7, 2014, he filed another motion for new trial raising claims of denial of compulsory process and his right of confrontation, prosecutorial misconduct, and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* This motion was denied November 27, 2014. *Id.* On November 28, 2018, Reed filed another motion for new trial raising the same four claims. This motion was denied January 3, 2019. *Id.*

At ¶ 18 of the standard form for § 2254 petitions, the petitioner is asked to explain why his petition is timely if filed more than one year after the conviction became final. Reed has left this question unanswered. Reed deposited his Petition in the prison mailing system on April 17, 2020, which counts as his date of filing. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

## Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat.

3

1214)(the "AEDPA"), enacted a statute of limitations applicable to habeas corpus petition. Codified in 28 U.S.C. § 2244(d), that statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A district court may dismiss a habeas petition *sua sponte* on limitations grounds when conducting an initial review under Rule 4 of the Rules Governing § 2254 Cases. *Day v. McDonough*, 547 U.S. 198 (2006)(upholding *sua sponte* raising of defense even after answer which did not raise it); *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002). However, before doing so it must give the Petitioner notice and an opportunity to respond. *Shelton v. United States*, 800 F.3d 292 (6th Cir. 2015).

4

For a state prisoner who does not seek review in a State's highest court, the conviction becomes final on the last day when such review could have been sought. *Gonzalez v. Thaler*, 565 U.S. 134 (2012).

Because Reed did not seek review of his conviction on direct appeal by the Supreme Court of Ohio, his conviction became final for purposes of § 2244(d) on the last day he could have sought review, forty-five days after the Second District's decision on direct appeal, or January 10, 2004. Reed does not give a precise date for the filing of his 26(B) Application, merely stating that it was filed in 2004. Since it was decided March 5, 2004, the Court will give Reed the benefit of the doubt and assume it was filed before January 10, 2004. That filing would toll the statute of limitations by virtue of § 2244(d)(2) until Reed's time to appeal to the Supreme Court of Ohio expired April 19, 2004. If the statute began to run that day, Reed did not make any other filing that would toll the statute and it expired April 20, 2005, fifteen years before he filed his Petition in this Court.

**Conclusion**

Because Reed's Petition is barred by the statute of limitations, it would be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 4, 2020.

5

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. **In particular if Petitioner has any facts or arguments to show he is not barred by the statute of limitations, he must raise them in any objections.** A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.